UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61482-CIV-ALTMAN/Hunt

**CYNTHIA CORRENTE**,

    *Plaintiff*,

v.

**NANCY A. BERRYHILL**,
*Acting Commissioner of the Social Security Administration*,

    *Defendant*.

_____/

## ORDER

Before the Hon. Roy K. Altman:

The Plaintiff, Cynthia Corrente, appeals the Defendant's denial of her application for Social Security Disability Benefits. In a nutshell, she says that the Administrative Law Judge ("ALJ") erred by failing to evaluate her fibromyalgia under the correct legal standard.

The parties have filed cross-motions for summary judgment—*see* Plaintiff's Motion for Summary Judgment ("Pl. MSJ") [ECF No. 23]; Defendant's Motion for Summary Judgment ("Def. MSJ") [ECF No. 26]—which this Court referred to United States Magistrate Judge Patrick M. Hunt for a Report and Recommendation (the "Report"). *See* Clerk's Notice of Assignment [ECF No. 2]. In his Report [ECF No. 30], the Magistrate Judge recommended that the Plaintiff's Motion be denied and that the Defendant's Motion be granted. *See* Report at 1. The Plaintiff timely objected. *See* Objections [ECF No. 31]. The Court has conducted a *de novo* review of those portions of the Report to which the Plaintiff has objected[1] and, for the following reasons, now

---

[1] *See* FED. R. CIV. P. 72(b)(3) ("*Resolving Objections.* The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the

1

**ADOPTS** the Report in full.

## Background

Corrente sought Disability Insurance Benefits under the Social Security Act, 42 U.S.C. § 401, *et seq. See generally* Complaint [ECF No. 1]. After the Defendant[2] denied her claim, she appealed, first, to an ALJ—who affirmed the Defendant's decision—and then to the Appeals Council, which denied review of her case. *See id*. at 1. On June 14, 2019, Corrente filed her Complaint, in which she asks this Court to overturn the ALJ's decision. *See generally id*.

The ALJ concluded that Corrente suffered from both a degenerative disc disease, which the ALJ characterized as "a severe impairment," and depression, which the ALJ determined was "not severe." Administrative Law Judge Decision ("ALJ Decision") [ECF No. 14] at 16–17. The parties quarrel over whether, in fact, the ALJ found that Corrente suffers from fibromyalgia. *See* Report at 3. Either way, the ALJ determined that Corrente's impairments—taken together—do not "meet or medically equal" the severity of one of the impairments set out in the Listing of Impairments in appendix 1, subpart P of 20 C.F.R. Part 404. *See* ALJ Decision at 18–19. The ALJ also held that Corrente had the "residual functional capacity" ("RFC") to "lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; and stand/walk for 6 hours in an 8-hour workday, with a sit stand option every 2 hours." *Id*. at 19. Finally, the ALJ concluded that "the claimant is capable of performing past relevant work as a credit manager and accounting clerk"—and that, therefore, "the claimant is not disabled[.]" *Id.* at 22.

---

matter to the magistrate judge with instructions."). The Court has also reviewed the unobjected-to portions of the Report for clear error and, finding none, adopts those portions as well. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").
[2] The Defendant is the Commissioner of the Social Security Administration.

**Standard of Review**

The Court's review of an ALJ's decision is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This determination—whether the ALJ applied the correct legal standard—is a legal one subject to *de novo* review. *Graham v. Bowen*, 90 F.2d 1572, 1575 (11th Cir. 1986) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 12 F.3d 1436, 1439 (11th Cir. 1997). The Court may not, however, "reweigh the evidence, or substitute [its] judgment" for the ALJ's—even if the "evidence preponderates against the [ALJ's] decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citation omitted).

**The Law**

Because Corrente's objections (primarily) concern the application of Social Security Ruling 12-2p ("SSR 12-2p"), this Court begins with a short overview of how that provision operates.

SSR 12-2p provides "guidance on how the SSA [Social Security Administration] develops evidence that a person has a medically determinable impairment [referred to in SSR 12-2p as an MDI] of fibromyalgia [or FM] and how it evaluates fibromyalgia in disability claims." *Sorter v. Comm'r of Soc. Sec.*, 773 F. App'x 1070, 1073 (11th Cir. 2019). SSR 12-2p "sets out a two-step process for evaluating symptoms, which involves (1) determining whether medical signs and findings show that the person has a medically determinable impairment, and (2) once a medically determinable impairment is established, evaluating the 'intensity and persistence of the person's pain or any other symptoms' and determining 'the extent to which the symptoms limit the person's

3

capacity for work.'" *Id.* (quoting SSR 12-2p, 77 Fed. Reg. 43640, 43643 (July 25, 2012) (describing Section IV)). And, "in order to decide whether a person is disabled based on a medically determinable impairment of fibromyalgia, the SSA considers the regular five-step sequential evaluation process used for any adult claim for disability benefits." *Id.*

In the first step—which asks whether a claimant has fibromyalgia—SSR 12-2p requires the ALJ to "find that a person has an MDI of FM if [a] physician diagnosed FM *and* provides the evidence we describe in section II.A. *or* section II.B., *and* the physician's diagnosis is not inconsistent with the other evidence in the person's case record." SSR 12-2p, 77 Fed. Reg. at 43641 (Section II) (emphasis added). Sections II.A and II.B list different criteria for diagnosing fibromyalgia: specifically, the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. *Id.*[3]

Under SSR 12-2p, "[a]s in all claims for disability benefits, we need objective medical evidence to establish the presence of an MDI. When a person alleges FM, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." *Id*. at 43642–43 (Section III.A). But SSR 12-2p also instructs ALJs that, "[i]n addition to obtaining evidence from a physician, we may request evidence from other acceptable medical sources, such as psychologists, both to determine whether the person has another MDI(s) and to evaluate the

---

[3] The first set of criteria (1990) requires that the claimant demonstrate: "(1) a history of widespread pain"; "(2) at least 11 positive tender points on physical examination"; and "(3) evidence that other disorders which could cause the symptoms or signs were excluded." SSR 12-2p, 77 Fed. Reg. at 43641–42 (Section II.A.1–3). The second set of criteria (2010) requires that the claimant show: "(1) a history of widespread pain"; "(2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions"; and "(3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id*. at 43642 (Section II.B.1–3).

severity and functional effects of FM or any of the person's other impairments. We also may consider evidence from medical sources who are not 'acceptable medical sources' to evaluate the severity and functional effects of the impairment(s)." *Id*. at 43643 (Section III.B.1). ALJs may also consider evidence from "nonmedical sources," including (1) "[n]eighbors, friends, relatives, and clergy"; (2) "[p]ast employers, rehabilitation counselors, and teachers"; and (3) "[s]tatements from SSA personnel who interviewed the person." *Id.* (Section III.B.2).

SSR 12-2p's second step assesses the intensity of a claimant's fibromyalgia. *Id.* (Section IV.B). In applying this second step, ALJs should "evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." *Id.* "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." *Id*.

After determining both that a claimant has fibromyalgia and that the fibromyalgia is of a certain (debilitating) intensity, ALJs "will consider [the claimant's fibromyalgia] in the sequential evaluation process to determine whether the person is disabled. As we explain in section VI. below, we consider the severity of the impairment, whether the impairment medically equals the requirements of a listed impairment, and whether the impairment prevents the person from doing his or her past relevant work or other work that exists in significant numbers in the national economy." *Id.* (Section V).

"As with any adult claim for disability benefits," ALJs use a five-step sequential evaluation

process "to determine whether an adult with an MDI of FM is disabled." *Id.* (Section VI). *First*, ALJs should consider whether the claimant is doing "substantial gainful activity"; if the claimant is, then "he or she is not disabled." *Id.* (Section VI.A). *Second*, ALJs should determine "whether the person has a 'severe' MDI." *Id.* (Section VI.B). If not, they are not disabled. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950–51 (11th Cir. 2014) ("We have described step two as a 'filter' requiring the denial of any disability claim where no severe impairment or combination of impairments is present. . . . To proceed to step three of the evaluation process, an ALJ need only conclude that an applicant had 'at least one' severe impairment."). *Third*, ALJs must decide "whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 C.F.R. part 404." *Id.* (Section VI.C). "[I]f the impairment meets or equals a listed impairment, disability is automatically established." *Wilbon v. Comm'r of Soc. Sec.*, 181 F. App'x 826, 827 (11th Cir. 2006).

But "FM is not a listed impairment." SSR 12-2p, 77 Fed. Reg. at 43644. As a result, when presented with a claim of fibromyalgia, the ALJ must calculate the claimant's RFC. *Id.* (Section VI.D). An ALJ bases an RFC computation "on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are 'not severe.' For a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" *Id.* (Section VI.D). With the RFC in hand, "[a]t steps 4 and 5, we use our RFC assessment to determine whether the person is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5)." *Id.* (Section VI.E). The burden of proof remains on the claimant until Step Five, where it "shifts to the

Commissioner to show significant numbers of jobs exist in the national economy that the claimant can perform." *Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 915 (11th Cir. 2015).

## The Facts

As relevant here, the ALJ described Corrente's fibromyalgia as follows:

> I find that the claimant's impairment of fibromyalgia is not severe. An impairment or combination of impairments is found 'not severe' when medical evidence establishes only a slight abnormality or a combination of slight abnormalities, which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). See Social Security Ruling (SSR) 96-3p.
>
> A review of the medical evidence indicates that the claimant has a history of fibromyalgia, which was treated by a rheumatologist, Aviva Hopkins, M.D. (Exs. 5F, 8F, and 18F). However, the objective medical evidence does not support the pain or symptoms alleged by the claimant. In fact, the claimant reported to Dr. Hopkins on November 2, 2015 that she was planning her daughter's wedding and she walked her dog for exercise (Ex. F5/25-26). A musculoskeletal examination on the same day indicated that the claimant had tenderness to palpation over the left greater trochanter, entire back, occiput, trapezius, and left chest wall, but no joint swelling was seen (Ex. 5F/26). Subsequent physical examinations indicated the same clinical findings (Exs. 5F/29; 8F/29, 31, and 34). However, the claimant reported to Dr. Hopkins on February 22, 2016 that she was swimming three days a week for about fifteen minutes, and she indicated on August 22, 2016 that she was exercising in the pool about two times per week (Exs. 5F/28 and 8F/28). Dr. Hopkins encouraged daily exercise for the claimant (Ex. 8F/29). Subsequently, the claimant indicated on January 9, 2017 that her pain had been better and she was doing yoga a few times a week (Ex. 8F/32). Dr. Hopkins encouraged a more rigorous exercise regimen than yoga (Ex. 8F/32). Finally, the claimant indicated on July 10, 2017 that she was still doing yoga and exercising in the pool (Ex. 8F/33).
>
> Based on the foregoing, I find that there is no persuasive evidence in the record to establish that fibromyalgia or any symptoms arising thereof continuously cause significant limitations. Thus, while the claimant has been diagnosed with fibromyalgia in the past, I find that it does not affect the claimant's ability to perform basic work-related functions, and is therefore considered non-severe.

ALJ Decision at 16–17.

## The Report and Corrente's Objections

In her motion for summary judgment, Corrente made three arguments. *First*, she said that the ALJ "committed legal error by failing to evaluate fibromyalgia under SSR 12-2p" and by "inaccurately conclude[ing] that Corrente's fibromyalgia was *not* a medically determinable impairment." Pl. MSJ at 3, 11. *Second*, she contended that the ALJ "committed legal error by failing to consider *non-exertional* impairments when formulating the residual functional capacity assessment (RFC). Thus, the RFC is not based on substantial evidence." *Id*. at 12. *Third*, she argued that the ALJ "erred by assigning *little weight* to the medical opinions given by the long-time treating physicians, Dr. Hopkins, M.D. and Dr. Celestin, M.D." *Id*. at 18.

The Magistrate Judge found none of these arguments persuasive and, for three reasons, recommended that Corrente's motion for summary judgment be denied. *See* Report at 1. *First,* he determined that "a reasonable reading of the ALJ's decision indicates that he found Plaintiff's fibromyalgia to be a medically determinable impairment that was non-severe. Although Plaintiff may take issue with that finding, the process by which the ALJ arrived at that finding is not inconsistent with SSR 12-2p." *Id*. at 4. *Second*, he rejected Corrente's argument that the ALJ had improperly formulated her RFC by omitting "non-exertional impairments" because "the ALJ instead found that the Plaintiff failed to demonstrate that the impairments actually caused the limitations alleged by Plaintiff." *Id*. at 8. *Third*, he found that the ALJ had justifiably ignored the "Treating Source Statements" of Corrente's treating physicians because "Hopkins' assessment, ECF No. 14 at 466–471, is indeed largely blank," and because there were "internal inconsistencies in Celestin's own evaluation." *Id*. at 6.[4]

---

[4] Dr. Aviva Hopkins, Corrente's rheumatologist, assessed Corrente's fibromyalgia as part of Corrente's application for Social Security Disability Benefits. *See* Hopkins Treating Source

Corrente advances a smorgasbord of (unnumbered and undifferentiated) objections to these conclusions. As best as the Court can tell, Corrente objects to the Report's first conclusion—that the ALJ found her fibromyalgia to be a "medically determinable impairment." Obj. at 2, 8–9. She also objects to the Report's second conclusion—that, in calculating her RFC, the ALJ accounted for her "non-exertional limitations." *Id*. at 7, 11. But Corrente does *not* object to the Report's third conclusion—that the ALJ justifiably disregarded her treating physicians' opinions. *See generally id*. And so, reviewing this last conclusion for clear error—and seeing none—the Court now adopts it here.

In her Objections, Corrente also raises a new argument: that the ALJ erred at Step Three by failing to consider whether her fibromyalgia "equaled a listing, or equaled a listing in combination with at least one other medically determinable impairment." *Id*. at 11–12. But, because she never made this argument to the Magistrate Judge, he never had a chance to consider it in writing his Report. This Court will not consider an argument Corrente never submitted to the Magistrate Judge in the first instance. *Cf. Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("The district court in this case had the discretion whether to consider Williams's argument regarding timeliness of his habeas petition when he did not raise the argument in the first instance to the magistrate judge."); *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000) ("To require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court.").[5] This new argument, in short, has been waived.

---

Statement [ECF No. 14] at 466–71. Dr. Serge Celestin, Corrente's psychiatrist, did the same for Corrente's depression. *See* Celestin Treating Source Statement [ECF No. 14] at 454–65.

[5] The Court here disregards both Corrente's regurgitation of arguments she already made at summary judgment and her conclusory (and unsupported) claims of Magistrate Judge error because they are procedurally improper. *See Holland v. Colvin*, No. 4:14-CV-194-VEH, 2015 WL

9

This, then, leaves two questions. *First*, did the ALJ determine that Corrente suffered from fibromyalgia? And, *second*, did the ALJ err in failing to include Corrente's "non-exertional limitations" in calculating her RFC? We address each in turn.

**Analysis**

I.     **Fibromyalgia**

According to the Magistrate Judge, "a reasonable reading of the ALJ's decision indicates that he found Plaintiff's fibromyalgia to be a medically determinable impairment that was non-severe." Report at 4. And this conclusion finds ample support in the record. The ALJ, after all, made clear—on no fewer than three occasions—that, in his estimation, Corrente *does* suffer from fibromyalgia. *See* ALJ Decision at 16 ("I find that the claimant's impairment of fibromyalgia is not severe[.]"); *id*. ("A review of the medical evidence indicates that the claimant has a history of fibromyalgia, which was treated by a rheumatologist, Aviva Hopkins, M.D. (Exs. 5F, 8F, and 18F)."); *id*. at 17 ("I find that there is no persuasive evidence in the record to establish that fibromyalgia or any symptoms arising thereof continuously cause significant limitations. Thus, while the claimant has been diagnosed with fibromyalgia in the past, I find that it does not affect the claimant's ability to perform basic work-related functions, and is therefore considered non-severe."). The ALJ, in sum, concluded that Corrente suffers from fibromyalgia.

In support of her contrary view—that the ALJ found she does *not* have fibromyalgia—Corrente advances three arguments. All are unavailing.

---

1245189, at *3 (N.D. Ala. Mar. 18, 2015) (in objecting to an R&R, a party may not simply restate the arguments it presented to the magistrate judge); *see also VanDiver v. Martin,* 304 F.Supp.2d 934, 937–938 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented[,] is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.").

*First*, she contends that the ALJ's use of the word "impairment" to refer to her fibromyalgia—rather than the phrase "medically determinable impairment," which he used to describe her disc disease and depression—establishes that, while he believed she suffers from the latter two, he specifically found she did not have the former. *See* Obj. at 8–9 (arguing that these "operative statutory terms" are mandatory and that "the ALJ actually knew the precise 'magic words' of 'medically determinable impairment' because the ALJ explicitly used those words to describe the Plaintiff's depression condition"). But the text of SSR 12-2p belies Corrente's position. Under Section III.A of that ruling, "[w]hen a person alleges FM, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of *the impairment*." SSR 12-2p, 77 Fed. Reg. at 43643 (emphasis added). Even the portion of SSR 12-2p on which Corrente relies, in other words, refers to the same unadorned "impairment" that Corrente spends so much time maligning.

And this makes sense. "The ALJ," after all, "is not required to use particular phrases or formulations as long as it can be determined what statutory and regulatory requirements the ALJ applied." *Schneidmiller v. Comm'r of Soc. Sec.*, 2016 WL 4578315, at *2 (M.D. Fla. Sept. 2, 2016); *Jamison v. Bowen*, 814 F.2d 585, 588–89 (11th Cir. 1987) ("We do not require the ALJs necessarily cite to particular regulations or cases," but "in order to make our review meaningful, we must be able to determine what statutory and regulatory requirements the ALJ did in fact apply[.]"). As noted, the ALJ three times expressed his view that Corrente suffers from fibromyalgia. His omission of the magic words "medically determinable" from his description of Corrente's "impairment" thus establishes nothing at all.

*Second*, Corrente says that "the ALJ did not contest the Plaintiff's legitimacy [sic] of her

alleged depression; rather, the ALJ merely found it did not rise to the level of a 'severe' impairment. In contrast, the ALJ did contest the credibility and the legitimacy of the Plaintiff's alleged fibromyalgia symptoms[.]" Obj. at 9. Again, Corrente insists, this disparity in the ALJ's treatment of her fibromyalgia and depression suggests that he did not believe she suffers from the former. In fact, however, the ALJ "contested" not the *presence* of Corrente's fibromyalgia, but only the extent of its *severity*. As he explained: "I find there is no persuasive evidence in the record to establish that fibromyalgia or any symptoms arising thereof *continuously cause significant limitations*." ALJ Decision at 17 (emphasis added). There is, indeed, no other way to construe the following statement: "Thus, while the claimant *has been diagnosed with fibromyalgia* in the past, I find that it does not affect the claimant's ability to perform basic work-related functions, and is therefore considered non-severe." *Id.* (emphasis added). In short, again, the ALJ was pellucid: Corrente has fibromyalgia; it just doesn't affect her ability to work.

*Third*, Corrente claims that "the ALJ did not follow the instructions as set forth in [SSR 12-2p]. The instructions require the ALJ to consider the entire record of evidence under the two tests [referring to Sections II.A and II.B]" and, "[t]hus, by not following the ruling's instructions, and by failing to analyze the evidence under both criteria tests, the ALJ inaccurately found the Plaintiff's fibromyalgia was not even a medically determinable impairment." Obj. at 2. Here, Corrente would be right if the ALJ had—as she submits—concluded that she does not have fibromyalgia. *See Janeda v. Comm'r of Soc. Sec.*, 2018 WL 1282313, at *6 (M.D. Fla. Mar. 13, 2018) ("[T]he Court finds that the ALJ erred in failing to consider Plaintiff's fibromyalgia under Section II.B. of SSR 12-2p and, consequently, may have erred in failing to consider Plaintiff's symptoms that arise from her fibromyalgia in determining Plaintiff's RFC."); *Catalan v. Berryhill*, 2018 WL 4055340, at *4 (M.D. Fla. Aug. 9, 2018) ("I am unable to determine whether the ALJ's

12

ultimate disability determination is supported by substantial evidence because he failed to consider Plaintiff's fibromyalgia according to the criterion set forth in SSR 12-2p."). But, again, the ALJ found that she *does* suffer from fibromyalgia. Corrente cites no case for the proposition that an ALJ must reference SSR 12-2p when—as here—he concludes that a claimant *has* fibromyalgia. And, given the ALJ's finding, his omission of any reference to SSR 12-2p could only have redounded to Corrente's benefit because it resulted in her getting (at least at this step) precisely what she had asked for: a finding that she suffers from fibromyalgia. In other words, even if the ALJ's failure to reference SSR 12-2p were error—and it was not—that error would be harmless. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

It may be, of course, that the ALJ did nothing more than *assume* the presence of a condition precedent (that Corrente has fibromyalgia) because that assumption did not alter his ultimate decision (that Corrente's ability to work is not significantly impaired). But, even if this is what the ALJ did—and there's no evidence to suggest that it was[6]—this is something courts do all the time. *See, e.g.*, *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003) ("We find it unnecessary to reach this question, however, because even assuming, *arguendo,* that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute."); *Brophy v. Jiangbo Pharm. Inc.*, 781 F.3d 1296, 1302 (11th Cir. 2015) ("Even assuming *arguendo* that the investors have sufficiently pled their allegations of misrepresentations and omissions, we find that significant ambiguities in those allegations make

---

[6] He never, for example, uses the kinds of words and phrases (e.g. "assume," "assuming arguendo," "assuming without deciding") that are the hallmarks of this methodology.

an inference of scienter more difficult to draw."). And Corrente cites no case or rule for the proposition that entertaining such an assumption would be improper.

Because the ALJ found that Corrente suffers from fibromyalgia, Corrente's first objection is **OVERRULED**.

## II. Corrente's RFC

Corrente also objects to the ALJ's RFC computation. *See* Obj. at 7. Again, in the Social Security Disability evaluation process, after an ALJ concludes that the claimant is not gainfully employed (Step One), that he or she has at least one "severe medically determinable impairment" (Step Two), and that the combination of impairments "meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1" (Step Three), he must then formulate the claimant's RFC. *See* SSR 12-2p, 77 Fed. Reg. at 43643–44 (Sections VI.A–C). In doing so, an ALJ should "consider the effects of all of the person's medically determinable impairments, including impairments that are 'not severe.' For a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 77 Fed. Reg. at 43644 (Section VI.D).

In challenging the ALJ's RFC computation—and, by extension, the Report's endorsement of that computation—Corrente marshals two objections.

*First*, she posits that "it is internally inconsistent to accept the Defendant's contention that the ALJ *intended* to find that the Plaintiff's fibromyalgia condition was a *'medically determinable impairment'*. . . but then simultaneously accept the ALJ's finding that 'no persuasive evidence in the record [exists] to establish that fibromyalgia or any symptoms of fibromyalgia continuously cause significant limitations.'" Obj. at 11. But it's perfectly consistent to conclude—as both the ALJ and Magistrate Judge did—that, while Corrente suffers from fibromyalgia, her fibromyalgia is non-severe, which is to say it does not significantly limit her ability to work. Corrente's argument

14

to the contrary presumes that the presence of fibromyalgia—in and of itself—entails significant limitation. But SSR 12-2p contemplates that *not every* fibromyalgia is disabling. Only *listed* impairments, after all, *automatically* establish limitation (and, by extension, disability). *See Wilbon v. Comm'r of Soc. Sec.*, 181 F. App'x 826, 827 (11th Cir. 2006) ("[I]f the impairment meets or equals a listed impairment, disability is automatically established."). And fibromyalgia is *not* a listed impairment. *See* SSR 12-2p, 77 Fed. Reg. at 43644 (Section VI.C) ("FM cannot meet a listing in appendix 1 because FM is not a listed impairment.").

SSR 12-2p thus implements a two-step process for evaluating whether a claimant's fibromyalgia constitutes a qualifying disability: *first*, the ALJ must determine *whether* a person has fibromyalgia, *see id.* at 43642 (Section IV.A); *second*, the ALJ must assess the "intensity and persistence of the person's pain and other symptoms and determine the extent to which the symptoms limit the person's capacity for work," *id.* at 43642–43 (Section IV.B). If (as Corrente seems to suggest) fibromyalgia were always disabling, then SSR 12-2p's second step would be superfluous because a finding of fibromyalgia would always establish disability. But this is not the law. *See Frazier v. Berryhill*, 2019 WL 3220025, at *3 (N.D. Ala. July 17, 2019) ("To the extent that Plaintiff cites to multiple diagnoses of fibromyalgia in her medical records, those alone does [sic] not establish work-related limitations impacting her RFC determination."); *see id.* ("To the extent that Plaintiff argues that the ALJ did not reference, SSR 12-2p, that is harmless."); *Figueroa v. Comm'r of Soc. Sec.*, 2017 WL 4992021, at *7 (M.D. Fla. Nov. 2, 2017) (affirming denial of disability where "the ALJ acknowledged the diagnosis of fibromyalgia, but did not find it disabling"). Corrente's claimed inconsistency, therefore, does not exist.

*Second*, Corrente argues that the ALJ "committed legal error by failing to properly account for [her] fibromyalgia physical, mental, and non-exertional symptoms of fatigue and pain." Obj.

at 11. But the ALJ specifically considered all the "medical and non-medical evidence, including statements by the claimant, objective medical findings, observations regarding the claimant's activities of daily living, and the totality of the medical evidence." ALJ Decision at 22. Corrente's suggestion that the ALJ did not consider these "non-exertional symptoms" is thus belied by the record.

What Corrente really seems to be saying, then—though admittedly she does not make this point—is that she disagrees with the way in which the ALJ discounted the evidence she submitted about these "non-exertional symptoms." Corrente, in other words, appears to suggest that the ALJ's RFC is not supported by substantial evidence. As a preliminary matter, although Corrente advanced this argument in her motion for summary judgment, she neither developed any arguments for it nor included any citations in support of it. *See* Pl. MSJ. at 12 ("The ALJ committed legal error by failing to consider *non-exertional* impairments when formulating the residual function capacity assessment (RFC). Thus, the RFC is not based on substantial evidence."). She then presented a similar position—again, without argument or citation—in her Objections. *See* Obj. at 11 ("Moreover, when formulating the RFC assessment, the ALJ committed legal error by failing to properly account for the Plaintiff's fibromyalgia physical, mental, and non-exertional symptoms of fatigue and pain. The ALJ's error was harmful, and violated section 'VI.D.' of Social Security Ruling 12-2p."). Even construing the latter as advancing a "substantial evidence" objection—admittedly a stretch given that the words "substantial evidence" never appear—Corrente has waived any such "substantial evidence" claim. *Cf. Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."); *Case v. Eslinger*, 555 F.3d 1317,

1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions.").

In any event, the ALJ's decision to discount her evidence on "non-exertional symptoms" is supported by substantial evidence. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis*, 12 F.3d at 1439. To begin with, the ALJ properly discounted the Treating Source Statements of Corrente's treating physicians—Drs. Celestin and Hopkins—because of errors and omissions in their opinions. *See* ALJ Decision. at 21 ("I give [Dr. Celestin's opinion] little weight because it is internally inconsistent."); *id.* ("I give [Dr. Hopkins' opinion] little weight because it is mostly blank."). And there was plenty of evidence in the record to support this finding. To give but a few obvious examples: Dr. Hopkins' Treating Source Statement consisted of responses to a four-page form that asked thirteen questions (with many subparts). *See* Hopkins Treating Source Statement at 467–70. But, rather than take the form (even somewhat) seriously, Dr. Hopkins answered only the seven questions that required the perfunctory act of checking a box for "yes" or "no" and left blank the six remaining questions—each of which required either a narrative response or else included multiple subparts. *Id*. This Court cannot fault the ALJ for disregarding such faulty—not to mention careless and lazy—work.

Dr. Celestin's report, for its part, was internally inconsistent. In response to Question 8, for instance, Dr. Celestin declared that Corrente was only "mildly limited" in her "ability to concentrate." Celestin Treating Statement at 463. And yet, in answering Question 12, Dr. Celestin wrote that Corrente's period of concentration—that is, the amount of time Corrente can dedicate to a task before needing a break—was less than five minutes (hardly a "mild" limitation). *Id*. at

17

464. Likewise, in responding to Question 10, Dr. Celestin said that Corrente was "not limited" in her "ability to adapt or manage oneself." But, in the space provided under Question 15, Dr. Celestin insisted that Corrente was likely to be "off task" at work more than 25% of the time. *Id.* The ALJ was not wrong to discount these flatly inconsistent assertions.

And the ALJ appropriately discounted Corrente's self-reported evidence—that, for instance, she suffered from "pain, fatigue, time off task, difficulties with concentration, persistence or pace, and depression," *see* Pl. MSJ at 13—because it was inconsistent with her day-to-day life. *See* Report at 8. So, for example, the ALJ found—and Corrente has not contested—that Corrente "was planning her daughter's wedding," "walk[ing] her dog for exercise," "swimming three days a week for about fifteen minutes," and "doing yoga a few times per week[.]" ALJ Decision at 17. "Based on the foregoing," the ALJ concluded "that there is no persuasive evidence in the record to establish that fibromyalgia or any symptoms arising thereof continuously cause significant limitations. Thus, while the claimant has been diagnosed with fibromyalgia in the past, I find that it does not affect the claimant's ability to perform basic work-related functions, and is therefore considered non-severe." *Id*.

Courts regularly discount a claimant's self-reported symptoms when, as here, the testimony about those symptoms is belied by the claimant's own account of her daily routine. *See Hennes v. Comm'r of Soc. Sec.*, 130 F. App'x 343, 349–50 (11th Cir. 2005) ("And, as the ALJ noted, the degree of Hennes's complaints also were belied by her testimony that she could shop for groceries and cook meals with her husband, put clothing in the washing machine, fold and hang clothing, and crochet."); *Chambers v. Saul*, 2020 WL 4757336, at *8 (S.D. Fla. Apr. 29, 2020) ("In her discussion of Plaintiff's daily activities, the ALJ noted that Plaintiff performed chores, prepared her meals, shopped, managed her own personal hygiene, and walked her dog up to an hour each

day. These inconsistencies in Plaintiff's daily actives versus her allegations of pain provides a factual basis for the ALJ's credibility determination regarding Plaintiff's subjective complaints of pain."); *Steele v. Comm'r of Soc. Sec.*, 2015 WL 5517283, at *3 (N.D. Ala. Sept. 18, 2015) (ALJ's determination was supported by substantial evidence because "the ALJ found that Steele's daily activities were inconsistent with disabling levels of pain"). The ALJ's conclusion that Corrente's description of her "non-exertional symptoms" was inconsistent with her daily routine was thus not even remotely erroneous. Either way, this Court may not "reweigh the evidence, or substitute [its] judgment" for the ALJ's—even if the "evidence preponderates against the [ALJ's] decision." *Bloodsworth*, 703 F.2d at 1239 (11th Cir. 1983) (citation omitted).

*\*\*\**

After careful consideration of the entire record, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. The Report [ECF No. 30] is **ADOPTED in full**.
2. The Plaintiff's MSJ [ECF No. 23] is **DENIED**.
3. The Defendant's MSJ [ECF No. 26] is **GRANTED**.
4. The Clerk is directed to **CLOSE** this case.
5. The Court will enter an order of final judgment separately.
6. All other pending motions are **DENIED as moot**, all hearings are **CANCELLED**, and any deadlines are **TERMINATED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of September 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record